IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOFTRAX CORPORATION,<br><br>                     Plaintiff,<br><br>    v.<br><br>PATRICK RASICOT,<br><br>                     Defendant. | Civil Action No. 05-11789-JLT |

**OPPOSITION TO PLAINTIFF'S MOTION
FOR DISCOVERY PURSUANT TO RULE 56(f)**

Softrax Corporation's Motion For Discovery Pursuant to Rule 56(f) (the "56(f) Motion") is based on the fatally flawed premise that discovery would change the simple legal question presented by Rasicot's Motion for Summary Judgment, which is whether the unambiguous language of the contract between the parties applies to bar Rasicot's employment with a company – NetSuite, Inc. ("NetSuite") – that is not "engaged primarily" in creating and selling products "designed for use by software and information service companies." Softrax's attempt to inject facts unnecessary to answer that question must be denied because parol evidence cannot be used to interpret an unambiguous contract.

## **ARGUMENT**

A. **Discovery Is Not Necessary To Resolve The Question Presented By Rasicot's Motion For Summary Judgment.**

Rasicot seeks summary judgment on the basis of an unambiguous, defined term in the parties' agreement. Seemingly fearful of a final judgment on the merits, Softrax seeks to prolong this litigation and waste the resources of both the parties and the Court by forcing discovery for facts that are immaterial to the single question upon which the case turns. Softrax's effort to cloud this case with facts that do not bear on the language of the contract is transparent and should not be countenanced by allowing unnecessary discovery.

The dispute in this case turns solely on this Court's interpretation of the contractual language, which is unambiguous. The only issue in the case is whether NetSuite qualifies as a "Prohibited Business" under the terms of the contract. As Rasicot demonstrated in his Memorandum in Support of his Motion for Summary Judgment (the "Summary Judgment Memo"), because software and information service companies comprise merely a tiny proportion of NetSuite's customer base, NetSuite is not "engaged primarily" in the business of selling or developing a class of software that is "<u>designed for use by</u> software and information service companies."

The definition of "Prohibited Business" provided in the contract is perhaps a bit unwieldy – given the use of multiple disjunctives – but it is not ambiguous. Once the disjunctives (<u>i.e.</u>, the "or" choices) are stripped away, the absence of internal punctuation reveals that the term "primarily" modifies the entire remainder of the definition: "the term 'Prohibited Business' shall mean any business **engaged primarily in the . . . sale**

**. . . of products . . . involving . . . software designed for use by software and information services companies.**"  Agreement, § 2(c) (emphasis added).

Softrax nonetheless argues that Rasicot's interpretation of "Prohibited Business" requires addition of language that is absent from the provision Softrax drafted.  See Plaintiff's Memorandum of Law (1) in Opposition to Defendant's Motion for Summary Judgment, and (2) in Support of Plaintiff's Motion for Discovery Pursuant to Rule 56(f) ("Opp. Mem.") at 12-14.  To the contrary, it is Softrax's proffered interpretation that in fact requires alteration of the contractual language.  Softrax urges an interpretation that would require substitution of the phrase "capable of use by" for the phrase "designed for use by" software and information services companies.[1]

The discovery requested by Softrax would yield only extrinsic information irrelevant to the Court's interpretation of the definition of "Prohibited Business."  No facts could be developed that would change the language of the contract.  Where, as here, the definition of a term in a contract is clear and precise, parol evidence cannot be

---

[1] Prior to removal of this case to federal court, the state court expressed its opinion that, "[a]s I construe the language, it does not matter that a relatively small percentage of NetSuite's customers are softwear [*sic*] companies."  Memorandum and Order on Preliminary Injunction (Aug. 12, 2005).  Softrax admits in its Opposition to Rasicot's Motion for Summary Judgment that the state court's interpretation of the contractual language is not law of the case, but argues that this Court must interpret the contract the same way if it is in fact unambiguous.  See Opp. Mem. at 16.  That argument is belied by case law demonstrating that courts can agree that language in a contract is unambiguous, but disagree on how the language is interpreted as a matter of law.  See, e.g., Federal Deposit Ins. Corp. v. Hill, 13 Mass. App. Ct. 514, 517 (1982) ("While we agree with the judge's determination that the security agreement was unambiguous and a complete integration of the agreement, we cannot concur with his interpretation that the collateral identified in the security agreement did not include the leased equipment."); Hardin v. Great Northern Nekoosa Corp., 237 Ga. 594, 597 (1976) ("In our opinion the terms of the farm lease are unambiguous, but we arrive at a different interpretation from that given it by the trial court.").

As a general matter, Softrax's reliance on the state courts' actions prior to removal is misplaced.  The single justice's denial of Rasicot's petition for interlocutory appellate review was not an adjudication on the merits, and has no preclusive effect; nor does the state trial court's preliminary injunction ruling.  See Summary Judgment Memo at 7-8.  Softrax articulates no basis – nor could it – for this Court to defer to a state court judge and abdicate its responsibility to independently review the contractual language to reach its own conclusions about whether NetSuite falls within the definition of "Prohibited Business" under the parties' contact.

considered, and the evidence that Softrax seeks to gain by discovery is therefore immaterial.  See Jefferson Ins. Co. of New York v. City of Holyoke, 23 Mass. App. Ct. 472, 476 n. 6 (1987) ("Because the language of the contract is clear and unambiguous, the judge was correct in not resorting to extrinsic evidence to interpret it.") (citing Newell-Blais Post # 443, Veterans of Foreign Wars of the United States, Inc. v. Shelby Mut. Ins. Co., 396 Mass. 633, 638 (1986)); Federal Deposit Ins. Corp. v. Hill, 13 Mass. App. Ct. 514, 517 (1982) ("We perceive no ambiguity in either the note or the security agreement.  Hence we believe that the judge properly excluded evidence offered to show the intent of the contracting parties concerning the extent of the collateral.").  As a result, it would be futile to allow such discovery, as well as a tremendous waste of resources, when the facts necessary to a final disposition of the case are already known, limited, and undisputed.

**B.     Additional Facts As To Which Softrax Seeks
         Discovery Are Not Germane To This Court's Analysis
         Concerning The Unambiguous Language Of The Contract.**

Although Softrax does its best to create a smokescreen to obscure the simplicity of this case, it does not matter that NetSuite and Softrax may compete in certain spaces, that NetSuite's products can be used by software companies, that Softrax may be expanding its business beyond software companies, that Softrax had such expansion in mind when it drafted the contract, or that Rasicot, who is not a lawyer, may have been mindful of the agreement in considering his employment with NetSuite.  These collateral factual issues are straw men raised by Softrax to divert attention from the central, fundamental question upon which this case rests, which is simply how the Court interprets the definition of "Prohibited Business" provided in the contract.

4

Because the discovery Softrax seeks is immaterial to the Court's interpretation of a defined, unambiguous term in the contract, the 56(f) Motion must be denied. See Knott v. McDonald's Corp., 147 F.3d 1065, 1069 (9th Cir. 1998) (finding no abuse of discretion in district court's denial of 56(f) motion where "[n]one of the evidence sought by the [plaintiffs] could have changed the clear and unambiguous language of their assignment" and therefore "none of the evidence sought could have forestalled summary judgment"); St. Louis Union Trust Co. v. United States, 617 F.2d 1293, 1300 (8th Cir. 1980) (approving district court's denial of 56(f) motion where, "because the Escrow Agreement was unambiguous, the parol evidence rule precluded any evidence concerning the parties' written intent to reach an agreement inconsistent with the written contract" and therefore "no purpose would have been served in allowing discovery concerning an alleged parol agreement"); Siemens Westinghouse Power Corp. v. Dick Corp., 293 F. Supp.2d 336, 343-44 (S.D.N.Y. 2003) ("The Court notes that there has not yet been any discovery in this case. Nevertheless, because, as explained above, the Consortium Agreement is unambiguous in regard to [defendant's] obligation to pay the liquidated damages in the first instance, discovery relating to the parties' intentions on that issue is unnecessary.").[2]

---

[2] Even if the term "Prohibited Business" as defined in the contract were ambiguous, as this Court previously has observed, "Massachusetts law construes ambiguous contractual language against the drafter. Indeed, the drafter of an ambiguous term is generally held to any reasonable interpretation attributed to it by the nondrafting party." ER Holdings, Inc. v. Norton Co., 735 F. Supp. 1094, 1100 (D. Mass. 1990) (citing LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp., 739 F.2d 4, 7 (1st Cir. 1984); Chelsea Indus. v. Accuray Leasing Corp., 699 F.2d 58, 61 (1st Cir. 1983); Merrimack Valley Nat'l Bank v. Baird, 372 Mass. 721, 724 (1977)). These principles of strict construction against the drafter apply with particular strength in the context of employment covenants, "'because they are the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through the loss of his livelihood.'" Sentry Insurance v. Firstein, 14 Mass. App. Ct. 706, 707 (1982) (quoting Restatement (Second) of Contracts § 188 cmt. g (1991)).

5

**CONCLUSION**

For the foregoing reasons, and those set forth in his Summary Judgment Memo, Defendant Patrick Rasicot respectfully requests that this Court deny Plaintiff's Motion for Discovery Pursuant to Rule 56(f), grant Rasicot's Motion for Summary Judgment, and enter final judgment in Rasicot's favor, including an award of attorneys' fees.

Dated:  October 14, 2005

        Respectfully submitted,

        PATRICK RASICOT

        By his attorneys
        BIRNBAUM & GODKIN, LLP


        /s/ Melissa M. Longo
        Scott A. Birnbaum (BBO# 543834)
        Robert N. Feldman (BBO# 630734)
        Melissa M. Longo (BBO # 647649)
        Birnbaum & Godkin, LLP
        280 Summer Street
        Boston, MA  02210
        Tel: 617-307-6100
        Fax: 617-307-6101


CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered to all counsel of record on October 14, 2005, by electronic service.

        /s/ Melissa M. Longo
        Melissa M. Longo